### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRENDA CANNON,** | Civ. No. 2:20-cv-01626 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **COMMUNICATION COMPONENTS, INC.; DENNIS NATHAN, PAT CERULLI, AND DOES 1-50** | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Presently pending in this action for sex discrimination and breach of contract is a motion by Defendants Communication Components, Inc. ("CCI"), Dennis Nathan ("Nathan"), Pat Cerulli ("Cerulli") for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 94. For the reasons set forth below, Defendants' motion for summary judgment is **granted in part and denied in part.**

## I.   BACKGROUND AND PROCEDURAL HISTORY

Defendant CCI is a New Jersey corporation that provides a variety of products and services to mobile network operators in the United States, Europe, and other regions of the world. with respect to wireless communication. Defs.' Stmt. Of Undisputed Facts ("DSUF") at ¶¶ 1-2. Plaintiff Brenda Cannon ("Plaintiff") was employed by CCI as a sales manager pursuant to the terms of a written employment contract dated November 14, 2014 ("Employment Contract"), which contained all the terms of Plaintiff's employment. *Id.* at ¶ 4; Decl. of Dennis Nathan ("Nathan Decl.") at ¶ 9, ECF No. 94-1. Plaintiff commenced her employment on December 1, 2014 and was terminated on June 22, 2018. DSUF at ¶¶ 3, 13; November 14, 2014 Employment Contract attached to Nathan Decl. as Ex. A, ECF No. 94-2.

Defendant Nathan is co-owner, President, and Chief Technology Officer of CCI. Nathan Decl. at ¶ 2. Cerulli and Plaintiff were co-equal sales employees until Cerulli became Vice President of Sales and Plaintiff's supervisor in April 2017. Decl. of Patrick Cerulli ("Cerulli Decl.") at ¶¶ 13, 14, ECF No. 94-3.

On May 28, 2019, Plaintiff commenced this action in the United States District Court for the Western District of Washington claiming violations of both federal and state (New Jersey and Washington) anti-discrimination laws. On August 23, 2019, in response to Defendants' first motion to dismiss, Plaintiff filed an eleven-count First Amended Complaint ("FAC") claiming disparate treatment and a hostile work environment on account of her sex, as well as unlawful termination in retaliation for objecting to and reporting such treatment to CCI's human resources department. Plaintiff further alleges that, as a result of such treatment and termination, CCI breached both its employment contract with Plaintiff and the implied covenant of good faith and fair dealing, made fraudulent representations, and failed to fulfill certain promises made to Plaintiff regarding her compensation and eligibility for promotions and other career advancement opportunities, and that each of the Defendants has been unjustly enriched and caused Plaintiff emotional distress. *See* FAC, *generally*, ECF No. 24.

Defendants subsequently filed a motion to dismiss the FAC, which was granted in part by the Washington District Court and resulted in the transfer of this action to this Court on February 14, 2020. *See* ECF No. 38. Defendants then filed a second motion to dismiss seeking dismissal of nine of the eleven counts in the FAC and did not move to dismiss the breach of contract (Count Five) and implied covenant of good faith and fair dealing claims (Count Eight). *See* ECF Nos. 52, 53. This Court granted Defendants' motion to dismiss in its entirety except for Plaintiff's sex discrimination claim under the Washington Law Against Discrimination ("WLAD") (Count Three). *See* October 22, 2020 Opinion ("Dismiss Op."), ECF No. 57. As further discovery is not permitted,[1] *see* ECF No. 85, Defendants now move for summary judgment on the three claims that remain − sex discrimination under WLAD, breach of contract and the implied covenant of good faith and fair dealing.

## II.    STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). The Court's role at the summary judgment stage "is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

---

[1] According to Defendants, Plaintiff served no interrogatories or document requests, nor did she take any depositions.

trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

The party moving for summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). "[U]nsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d. Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

In this case, Plaintiff has failed to properly place facts in dispute by providing a responsive statement of undisputed material facts that addresses "each paragraph of the movant's statement" and citing to "particular parts of materials in the record" as required by L. Civ. R. 56.1(a) and Fed. R. Civ. P. 56(c), respectively. Instead, Plaintiff makes only conclusory statements that Defendants' facts are inaccurate and in dispute. *See* Pl.'s Response to Defs.' Mot. for Summary Judgment at 3-4. Accordingly, the recitation of facts above is taken from Defendants' Statement of Undisputed Facts, which has been deemed undisputed. *See* Fed. R. Civ. P. (e)(2); *Clark v. New Jersey*, 2017 WL 5513689, at *n.1 (D.N.J. Nov. 17, 2017) (citing *Hernandez v. United States*, 608 Fed. Appx. 105, 109–10 (3d Cir. 2015) (finding district court did not err in treating moving party's version of facts as undisputed when deciding summary judgment motion because nonmoving party failed to file local Rule 56.1 statement of disputed facts or submit evidence in response to summary judgment motion).

Plaintiff also failed to comply with the briefing schedule imposed in the Magistrate Judge's April 20 2022 Scheduling Order by submitting her opposition brief five days beyond the July 8, 2022 deadline.[2] *See* ECF No. 91. Nevertheless, "'a party's failure to file a timely response ... by itself, does not require summary judgment" to be entered in the movant's favor.'" *Brown v. City of Philadelphia*, 541 F. Supp. 3d 605, 612 (E.D. Pa. 2021) (citations omitted). "[T]he court must still 'conduct a full analysis to determine whether granting summary judgment' is appropriate." *Id.* (citing *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 614 (3d Cir. 2018); Fed. R. Civ. P. 56(e)(3) (where party fails to properly support factual assertions, court may grant summary judgment "*if* the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it." (emphasis added)).

---

[2] Any further disregard of Court rules or orders may result in sanctions.

III.     **DISCUSSION**

A. Discrimination under WLAD (Count Three)[3]

In Count Three, Plaintiff alleges disparate treatment due to her gender and hostile work environment in violation of the WLAD. A plaintiff may establish a prima facie case either by offering direct evidence that discriminatory intent was a "significant or substantial factor" in the employer's adverse employment action, or "by satisfying the *McDonnell Douglas [v. Green*, 411 U.S. 792 (1973)] burden-shifting test that gives rise to an inference of discrimination." *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wash. App. 734, 743–44, (2013) (citing *Kastanis v. Educ. Emps.' Credit Union*, 122 Wash.2d 483, 491 (1993) (adopting *McDonnell Douglas* standard for discrimination cases under WLAD), *amended*, 122 Wash. 2d 483 (1994)).

*1. Disparate Treatment*

"To establish a prima facie disparate treatment discrimination case, a plaintiff must show that his employer simply treats some people less favorably than others because of their protected status." *Alonso*, 178 Wash. App. at 743-44 (citing *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wash. App. 212, 226 (1996)). Here, Defendants argue that under the *McDonnell Douglas* burden-shifting analysis, Plaintiff cannot establish that her termination was attributable to her membership in a protected class, nor can she show that CCI's reasons for termination were pretextual. However, as the Court noted in its earlier Opinion, Plaintiff does not allege in her FAC that the adverse employment action in her disparate treatment claim is termination.[4] *See* Dismiss Op. at 5; FAC at ¶ 90. Rather, the basis of her disparate treatment claim is that she was singled out due to her gender by, for example, having different rules applied to her than those that applied to her male colleagues. *See* Dismiss Op. at 6; FAC at ¶¶ 50-54, 71, 76-78. In focusing solely on Plaintiff's *termination* as the adverse employment action, Defendants have not satisfied their initial burden to show that there are no genuine issues of material fact for a reasonable jury to conclude that Plaintiff was treated less favorably for being female. Thus, Defendants' motion for summary judgment on the disparate treatment claim under WLAD is **denied** without prejudice.

*2. Hostile Work Environment*

A hostile work environment claim under WLAD requires Plaintiff to show "(1) unwelcome harassment; (2) that is attributable to [Plaintiff's] membership in a protected class; (3) which affected the terms and conditions of [Plaintiff's] employment; and (4)

---

[3] The Court previously dismissed Plaintiff's WLAD retaliation claim. *See* Dismiss Op. at 7-8.

[4] Plaintiff asserts that her termination was motivated by retaliation for threatening to complain to CCI's human resources department. FAC at ¶¶ 7, 83, 84.

which can be imputed to [Plaintiff's] employer." *Hotchkiss v. CSK Auto, Inc.*, 918 F. Supp. 2d 1108, 1118 (E.D. Wash. 2013). "[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "The conduct must be both objectively abusive (reasonable person test) and subjectively perceived as abusive by the victim." *Adams v. Able Bldg. Supply, Inc.*, 114 Wash. App. 291, 297 (2002) (citing *Harris*, 510 U.S. at 21–22).

Upon reviewing the record,[5] the Court finds that there are genuine issues of material fact precluding summary judgment on the hostile work environment claim. For example, Plaintiff insists that Nathan attempted to kiss her twice. *See* Tr. at 138:3-7; DSUF at ¶ 52. Although Nathan denies that such conduct ever occurred, *see* DSUF at ¶ 53, Plaintiff's deposition testimony sets forth specific facts pertaining to the alleged kissing and is sufficient to defeat summary judgment. *See Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320-21 (3d Cir. 2014) ("[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment," even if affidavit is self-serving). Moreover, contrary to Defendants' assertion that two attempts to kiss Plaintiff are too few to have created a hostile work environment, "[w]hether harassment is sufficiently severe or pervasive is a question of fact" for the jury to decide. *See Adams*, 114 Wash. App. at 296 (citing *Harris*, 510 U.S. at 23). Defendants' reliance on *Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2020) to argue otherwise is unavailing. In *Brooks,* the Ninth Circuit expressly stated that it was not deciding whether a single instance of sexual harassment can ever be sufficient to establish a hostile work environment under Title VII. *Id.* at 925. Rather, the court found that the single instance of nonviolent sexual assault was not pervasive and did not alter the terms and conditions of the plaintiff's employment because the employer immediately and completely removed the harasser from the workplace ensuring that the harassment was never repeated and entirely isolated. *Id.* at 927. Here, in contrast, Nathan was never removed from CCI and is accused of attempting to kiss Plaintiff a second time.

Next, although Defendants emphasize that Plaintiff admitted never reporting any of the purported harassment or discriminatory conduct to human resources or any other CCI department, *see* Tr. at 207:17-208:2, 220:8-13, "[w]here an owner, manager, partner or corporate officer personally participates in the harassment," their actions can automatically be imputed to the employer. *Glasgow v. Georgia-Pac. Corp.*, 103 Wash. 2d 401, 407 (1985); *Davis v. Fred's Appliance, Inc.*, 171 Wash. App. 348, 363 (Ct. of App. 2012) (noting harassment can be imputed when harasser's rank in the company is high enough for that person to be the company's alter ego). In this case, Nathan is CCI's co-owner and is alleged to have personally participated in the harassment. Further, Nathan's rank as President and Chief Technology Officer is high enough that his actions may automatically be imputed to the company.

---

[5] While it is not the Court's obligation to comb through evidence to discover facts in dispute and need only consider cited materials, the Court may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3).

In addition to the kissing allegation, Plaintiff testified that Cerulli took his clients to strip clubs and that his discussion of strip clubs made her uncomfortable. *See* Tr. at 110:5-9, 14-18; 112:17-24. A reasonable jury could credit Plaintiff's testimony over Cerulli's explanation that Plaintiff simply overheard a single conversation he had with another male salesperson in or about January or February 2018. Cerulli Decl. at ¶¶ 27-32. At that time, Cerulli was already Plaintiff's supervisor. Thus, making all reasonable inferences in the nonmoving party's favor, Defendants have not met their burden to show that the only reasonable verdict is in their favor. The attempted kissing and discussion of strip clubs taken together present disputed material facts upon which a jury could find that Defendants created a hostile work environment under WLAD. Defendants' motion for summary judgment is **denied**.

## B. Breach of Contract (Count Five) [6]

A valid oral contract[7] requires: (1) mutual assent of the parties; (2) consideration, and (3) reasonably certain contract terms. *See, e.g., Gant v. Ragone*, No. 20-01727, 2020 WL 6797125, at *7 (D.N.J. Nov. 19, 2020). Plaintiff insists that at the time she entered into the written Employment Contract with CCI, then Vice President of Sales, Jerry Kirshman, orally agreed to pay Plaintiff $5,000 for every antenna that she assisted in getting approved by a national wireless carrier. Tr. at 222:4-23. Plaintiff claims that Defendants, in breach of their oral contract, did not pay her this commission. However, a self-serving conclusory affidavit or deposition testimony is insufficient to defeat a motion for summary judgment unless, when juxtaposed with other evidence, it is sufficient for a rational trier of fact to credit Plaintiff's testimony. *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012). Here, apart from her own deposition testimony, Plaintiff has not proffered any other evidence that the parties entered into a valid oral contract separate from the written Employment Contract. *See, e.g., Gonzalez v. Secretary of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("[T]his is a case where the court, based on all of the evidence, can say with confidence that a rational trier of fact could not credit [plaintiff's testimony]." (quotation omitted)); *Berrada v. Cohen*, No. 16-574, 2018 WL 4629569, at *4 (D.N.J. Sept. 27, 2018), *aff'd*, 792 F. App'x 158 (3d Cir. 2019) (granting summary judgment to defendants where there was no evidence of contract modification other than plaintiff's self-serving testimony); *Soto v. Trella*, No. 03-1098, 2007 WL 4355463, at *2 (D.N.J. Dec. 10,

---

[6] In Count Five, Plaintiff does not allege that Defendants breached the written Employment Contract but contends that Defendants breached other promises regarding promotions and pay raises. To the extent Plaintiff claims those promises were part of an oral contract, they cannot survive summary judgment because, as discussed herein, there is insufficient evidence of *any* valid oral contract. Further, those breach of promise claims were also asserted under quasi-contract and fraud theories, which have already been dismissed by this Court. See Dismiss Op. at 8-9.

[7] Neither party has briefed whether Washington or New Jersey law should apply to the breach of oral contract claim. However, Defendants cite to New Jersey law and the Employment Contract, ¶ 16 requires New Jersey law to govern any disputes. In any event, an extensive choice of law analysis is unnecessary because Washington law is substantially similar with respect to the elements of contract law at issue. *See, e.g., Keystone Land & Development Co. v. Xerox Corp.*, 152 Wash.2d 171, 177-78 (2004).

2007) (granting summary judgment to defendants on excessive force claim where plaintiff relied on "only his own self-serving testimony" and there was no "eyewitness account, corroborating documentation or other supporting evidence").

In fact, apart from the lack of any corroborating evidence of a valid oral contract, Plaintiff's testimony is also contradicted by documentary evidence. The Employment Contract, for example, contains an express provision that the "letter agreement may not be amended or modified except by an express written agreement signed by [Plaintiff] and a duly authorized officer of CCI." Employment Contract at ¶ 15. Additionally, the Employment Contract includes an integration clause stating that the agreement "and the Exhibit attached hereto contain all of the terms of [Plaintiff's] employment with CCI and supersede any prior understandings or agreements, whether oral or written, between [Plaintiff] and CCI." *Id.* at ¶ 14; *see, e.g., Telmark Packaging Corp. v. Nutro Labs. & Nature's Bounty,* Civ. No. 05–3049, 2008 WL 43954, at *4 (D.N.J. Jan. 2, 2008) (granting defendant summary judgment on oral promise claim because contract contained integration clause). Without corroborating evidence, Plaintiff's unsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment. *See Parker v. Sch. Dist. of Philadelphia,* 415 F. Supp. 3d 544, 554 (E.D. Pa. 2019), *aff'd,* 823 F. App'x 68 (3d Cir. 2020) (citing *Thomas v. Delaware State Univ.,* 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) (additional citations omitted).

Even if there was sufficient evidence for a jury to find that the parties entered into a valid oral agreement, Plaintiff has not proffered any evidence pertaining to any breach of that contract, such as the number of antennas approved, Plaintiff's assistance in obtaining those approvals, and the amount of commission Plaintiff was owed for those approved antennas. Thus, the Court concludes that a rational trier of fact could not credit Plaintiff's self-serving testimony regarding her breach of contract claim. Plaintiff has failed to meet her burden to establish a genuine issue of material fact for trial on this issue. Defendants' motion for summary judgment on Count Five is **granted**.

C. Breach of Implied Covenant of Good Faith and Fair Dealing (Count Eight)

Plaintiff alleges that in breach of the implied covenant of good faith and fair dealing, Defendants never intended to fulfill their obligation to promote her. FAC at ¶ 130. However, Defendants are correct that without an enforceable contract, no such implied covenant attaches. *See Fields v. Thompson Printing Co.,* 363 F.3d 259, 271 (3d Cir. 2004) (recognizing New Jersey law provides that every enforceable agreement contains covenant of good faith and fair dealing); *Kapossy v. McGraw–Hill, Inc.,* 921 F. Supp. 234, 248 (D.N.J. 1996). Defendants' motion for summary judgment on Count Eight is **granted.**

## IV.    CONCLUSION

For the reasons noted above, Defendants' motion for summary judgment is **granted in part and denied in part**. Summary judgment on the WLAD claim in Count Three for disparate treatment and hostile work environment is **DENIED**. Defendants' summary

7

judgment motion is **GRANTED** on Plaintiff's breach of contract claim (Count Five) and breach of the implied covenant of good faith and fair dealing (Count Eight).

s/William J. Martini

_____

**WILLIAM J. MARTINI, U.S.D.J.**

Date: September 19th, 2022